Slip Op. 26-76

## UNITED STATES COURT OF INTERNATIONAL TRADE

SAHA THAI STEEL PIPE PUBLIC
COMPANY LIMITED,

      Plaintiff,

  and

THAI PREMIUM PIPE CO. LTD,

      Plaintiff-Intervenor,

v.

UNITED STATES,

      Defendant,

  and

NUCOR TUBULAR PRODUCTS, INC,
AND WHEATLAND TUBE COMPANY,

      Defendant-Intervenors.

**Before: Gary S. Katzmann, Judge**
**Court No. 21-00627**

## OPINION

[Commerce's Third Remand Results are sustained.]

Dated: July 17, 2026

Daniel L. Porter argued for Pillsbury Winthrop Shaw Pittman LLP, of Washington, D.C., for Plaintiff Saha Thai Steel Pipe Pub. Co. Ltd. With him on the briefs was Gina M. Colarusso.

Aqmar Rahman and Robert G. Gosselink, Trade Pacific PLLC, of Washington, D.C., for Plaintiff-Intervenor Thai Premium Pipe Co. Ltd.

Collin T. Mathias, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., argued for Defendant the United States. With him on the briefs were Brett A. Shumate, Assistant Attorney General, Patricia M. McCarthy, Director, and Franklin E. White, Jr., Assistant Director. Of counsel on the brief was JonZachary Forbes, Senior Attorney, Office of Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

Christopher T. Cloutier, Schagrin Associates, of Washington, D.C., argued for Defendant-Intervenor Wheatland Tube Co. With him on the briefs were Roger B. Schagrin and Saad Y. Chalchal.

Katzmann, Judge: This case arises from a challenge to the U.S. Department of Commerce's ("Commerce") final determination in the 2019–2020 administrative review of the antidumping duty order on circular welded carbon steel pipes and tubes from Thailand. See Welded Carbon Steel Pipes and Tubes From Thailand: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2019-2020, 86 Fed. Reg. 69620 (Dep't Com. Dec. 8, 2021) ("Final Determination"). The dispute returns to the court following three remand orders. See Order at 2, Oct. 11, 2022, ECF No. 60 ("First Remand Order") (granting voluntary remand); Saha Steel Pipe Pub. Co. Ltd. v. United States, 47 CIT __, __, 663 F. Supp. 3d 1356 (2023) ("Second Remand Order"); Saha Thai Steel Pipe Pub. Co. Ltd. v. United States, 49 CIT __, 789 F. Supp. 3d 1293 (2025) ("Third Remand Order").

At this stage in the proceeding, the case turns on one question: whether Commerce erred in applying an adverse inference to the affiliation determination between Plaintiff Saha Thai Steel Pipe Company Limited ("Saha Thai") and one of Saha Thai's home-market customers, BNK Steel Co. Ltd. ("BNK"). See Final Results of Redetermination Pursuant to Court Remand at 1–2, (Dep't Com. Aug. 11, 2025), ECF No. 112 ("Third Remand Results"). For the reasons set forth below, the court holds that Commerce's application of an adverse inference is supported by substantial evidence and in accordance with law.

## BACKGROUND

The legal framework and administrative history of this case have been set forth in the previous remand orders and are recounted here to extent they are relevant. See Second Remand Order, 663 F.Supp.3d at 1360; Third Remand Order, 789 F.Supp.3d at 1296.

### I.        Legal and Regulatory Framework

### A.        Antidumping Duties

"Dumping" occurs when a foreign producer sells goods in the United States at a lower price than the producer charges for the same product in its home market.  See Sioux Honey Ass'n v. Hartford Fire Ins. Co., 672 F.3d 1041, 1046 (Fed. Cir. 2012).  This practice constitutes unfair competition because it permits foreign producers to undercut domestic producers by selling products below "fair value."  Apex Frozen Foods v. United States, 862 F.3d 1322, 1325 (Fed. Cir. 2017) (citation omitted).  "Sales at less than fair value are those sales for which the 'normal value' (the price a producer charges in the home market) exceeds the 'export price' (the price of the product in the United States)."  See id. at 1326; see also 19 U.S.C. § 1677(35)(A).  To address the harmful impact of such unfair competition, Congress enacted the Tariff Act of 1930, which empowers Commerce to investigate potential dumping and, if necessary, to issue orders instituting duties on subject merchandise.  See Sioux Honey, 672 F.3d at 1046–47.  If Commerce determines that goods are being, or are likely to be, sold at less than fair value and the International Trade Commission determines that the sale of the merchandise at less than fair value materially injures, threatens, or impedes the establishment of an industry in the United States, Commerce imposes an "antidumping duty" in an amount that reflects the difference between the "normal value" in the home market and the "export price" (or the constructed export price) of selling the product in the United States.  19 U.S.C. § 1673; see also Sioux Honey, 672 F.3d at 1047; Diamond Sawblades Mfrs. Coal. v. United States, 866 F.3d 1304, 1306 (Fed. Cir. 2017).

Upon a party's request, Commerce must "review[] and determine . . . the amount of any antidumping duty" each year after the publication of an antidumping duty order.  19 U.S.C.

§ 1675(a)(1)(B). In conducting this administrative review, Commerce is to determine anew "the normal value and export price (or constructed export price) of each entry of the subject merchandise, and ... the dumping margin for each entry." Id. § 1675(a)(2)(A).

### B.     Adverse Facts Available

In an administrative review of antidumping duty orders, Commerce "obtains most of its factual information . . . from submissions made by interested parties during the course of the proceeding." 19 C.F.R. § 351.301(a); see also QVD Food Co. v. United States, 658 F.3d 1318, 1324 (Fed. Cir. 2011). If "necessary information is not available on the record," or if in an interested party withholds requested information, fails to provide information by the submission deadlines or in the form or manner requested, significantly impedes a proceeding, or provides information that cannot be verified, "[Commerce] shall . . . use the facts otherwise available" to calculate the dumping margin. 19 U.S.C. § 1677e(a). "Commerce can only use facts otherwise available to fill a gap in the record." Zhejiang DunAn Hetian Metal Co. v. United States, 652 F.3d 1333, 1348 (Fed. Cir. 2011).

If Commerce also determines that an interested party has "failed to cooperate by not acting to the best of its ability to comply with a request for information," Commerce "may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available." 19 U.S.C. § 1677e(b)(1); see also Diamond Sawblades Mfrs.' Coal. v. United States, 986 F.3d 1351, 1358 (Fed. Cir. 2021). "Compliance with the 'best of its ability' standard is determined by assessing whether respondent has put forth its maximum effort to provide Commerce with full and complete answers to all inquiries in an investigation." Nippon Steel Corp. v. United States, 337 F.3d 1373, 1382 (Fed. Cir. 2003) (quoting 19 U.SC. § 1677e(b)). "An adverse

inference may not be drawn merely from a failure to respond, but only under circumstances in which it is reasonable for Commerce to expect that more forthcoming responses should have been made . . . ." Id. at 1383. While a "single error" may not fairly support an inference that "the entirety of the respondent's submissions . . . are unreliable," "numerous oversights would likely suggest a pattern of unresponsiveness justifying" application of adverse facts available. Fujian Mach. & Equip. Imp. & Exp. Corp. v. United States, 27 C.I.T. 1059, 1061 & n.2, 276 F. Supp. 2d 1371, 1374 & n.2 (2003) (internal quotation marks and citation omitted).

Before Commerce applies an adverse inference, if Commerce determines that a party did not comply with a request for information, Commerce "shall promptly inform the person submitting the response of the nature of the deficiency and shall, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency in light of the time limits established for the completion of investigations or reviews . . . ." 19 U.S.C. § 1677m(d). "Inherent in the requirement of § 1677m(d) is a finding that Commerce was or should have been aware of the deficiency in the questionnaire response." ABB Inc. v. United States, 42 CIT __, __, 355 F. Supp. 3d 1206, 1222 (2018).

### C. Affiliation

"[I]nformation about affiliation is fundamental for Commerce to calculate the dumping margin." Kumar Indus. v. United States, 49 CIT __, __, 779 F. Supp. 3d 1329, 1340–41 (2025) (internal quotation marks and citation omitted); see also Crawfish Processors All. v. United States, 477 F.3d 1375, 1378 (Fed. Cir. 2007). In calculating normal value, Commerce disregards sales made to home market affiliates outside "the ordinary course of trade." 19 U.S.C. § 1677b(a)(1)(B)(i); see also Torrington Co. v. United States, 25 C.I.T. 395, 402, 146 F. Supp. 2d

845, 860–61 (2001) ("Examples of what could be considered outside the ordinary course of trade include . . . merchandise sold to an affiliated party not at an arm's length transaction."). By statute, persons or corporate entities are considered "affiliated" if they are:

> (A) Members of a family . . . . (B) Any officer or director of an organization and such organization. (C) Partners. (D) Employer and employee. (E) Any person directly or indirectly owning, controlling, or holding with power to vote, 5 percent or more of the outstanding voting stock or shares of any organization and such organization. (F) Two or more persons directly or indirectly controlling, controlled by, or under common control with, any person. (G) Any person who controls any other person and such other person.

19 U.S.C. § 1677(33). "Although § 1677(33) speaks of 'persons,' this definition governs the standard for affiliation between corporate entities as well." Agro Dutch Indus. Ltd. v. United States, 508 F.3d 1024, 1031 n.5 (Fed. Cir. 2007). Commerce's regulations explain that, in evaluating affiliation under 19 U.S.C. § 1677(33), Commerce "will consider the following factors, among others: [c]orporate or family groupings; franchise or joint venture agreements; debt financing; and close supplier relationships." 19 C.F.R. § 351.102(b)(3); see also 19 C.F.R. § 351.401(f)(1)–(2) (describing factors Commerce considers for whether to treat affiliates as a single entity).

## II.    Factual History

### A.    Antidumping Administrative Review

In 1986, Commerce issued an antidumping order on welded carbon steel pipes and tubes[1]

---

[1] The subject merchandise is " 'standard pipe' or 'structural tubing,' which includes pipe and tube with an outside diameter of 0.375 inch or more but not over 16 inches, of any wall thickness." Antidumping Duty Order, 51 Fed. Reg. at 8341. Standard pipe is used in "plumbing and heating systems, air conditioning units, machinery, buildings, sprinkler systems, irrigation systems, and water wells for low-pressure conveyance of air, steam, natural gas, water, oil, or other liquids and gases." Certain Circular Welded Pipe and Tube from Brazil, India, Korea, Mexico, Taiwan, Thailand, and Turkey, Inv. Nos. 701 TA 253 and 731-TA-132, 252, 271, 273, 532-534, and 536 (Fourth Review) at 6, USITC Pub. 4754 (Jan. 2018).

from Thailand. Antidumping Duty Order; Circular Welded Carbon Steel Pipes and Tubes from Thailand, 51 Fed. Reg. 8341, 8341 (Dep't Com. Mar. 11, 1986). On May 6, 2020, Commerce initiated the 2019–2020 administrative review of this antidumping order. Initiation of Antidumping and Countervailing Duty Administrative Reviews, 85 Fed. Reg. 26931, 26933 (Dep't Com. May 6, 2020), P.R. 17. Commerce selected Saha Thai as a mandatory respondent[2] and issued an initial questionnaire to Saha Thai on October 13, 2020. See Letter from J. Willoughby to A. Villaneueva, re: Respondent Selection at 1 (Dep't Com. Oct. 13, 2020), P.R. 45, C.R. 34; Letter from N. Decker to D. Porter, re: Initial Questionnaire (Dep't Com. Oct. 13, 2020), P.R. 46–48 ("Initial Questionnaire").

In response, Saha Thai reported "home market sales of subject merchandise to [several] affiliated customers" and "sales to potentially affiliated entities for consumption." See Letter from D. L. Porter to W. Ross, Sec'y of Com., re: Saha Thai's Sec. A Questionnaire Resp. at 3 (Nov. 10, 2020), P.R. 69–72, C.R. 45–62 ("Sec. A Q Resp."); Letter from D. L. Porter to W. Ross, Sec'y of Com., re: Saha Thai's Sec. B Questionnaire Resp. at 4 (Dec. 10, 2020), P.R. 133, C.R. 121–22 ("Sec. B Q Resp.").

Commerce issued three supplemental questionnaires, each of which probed Saha Thai's relationship with domestic affiliates. See Second Remand Order, 663 F. Supp. 3d at 1362; Letter from N. Decker to D. Porter, re: Suppl. Questionnaire for Saha Thai at 1 (Dep't Com. Feb. 3,

---

[2] In antidumping duty administrative reviews, Commerce is charged with "determin[ing] the individual . . . dumping margin for each known exporter and producer of the subject merchandise." 19 U.S.C. § 1677f-1(c)(1). However, where determining individual margins is "not practicable" due to the "large number of exporters" involved in the review, Commerce may limit its examination to a "reasonable number" of exporters, referred to as mandatory respondents. Id. § 1677f-1(c)(2); see also 19 C.F.R. § 351.109.

2021), C.R. 165; Letter from N. Decker to D. Porter, re: Suppl. Questionnaire for Saha Thai at 1 (Dep't Com. Mar. 11, 2021), C.R. 236; Letter from N. Decker to D. Porter, re: Supp. Questionnaire for Saha Thai at 3 (Dep't Com. Apr. 13, 2021), P.R. 217, C.R. 249 ("Third Suppl. Questionnaire"). In its Third Supplemental Questionnaire, Commerce asked Saha Thai to report "whether Saha Thai's or any of Saha Thai affiliates' employees, stockholders, managers, directors, officers, or department heads currently are or previously were employed by any other company involved in the development, production, sales and/or distribution of the merchandise under review" ("Shared Employee Question") and "whether Saha Thai's or any of Saha Thai affiliates' employees, stockholders, managers, directors, officers, or department heads has an equity or a debt position in any other company involved in the development, production, sales and/or distribution of the merchandise under review" ("Shared Debt or Equity Question"). Third Suppl. Questionnaire at 1.

In response to the Shared Employee Question, Saha Thai stated that "none of its or its affiliates' employees, stockholders, managers, directors, officers, or department heads currently is employed with any other company that develops, produces, sells and/or distributes the merchandise under review other than those affiliations already described in Saha Thai's Section A response." Letter from D. Porter to G. Raimondo, Sec'y of Com., re: Saha Thai's Supp. Questionnaire Resp. Part 2 at 2–3 (May 6, 2021), P.R. 229–30, C.R. 258–59 ("Third Suppl. Q Resp."). In none of its submissions did Saha Thai identify BNK as a potential affiliate. See Sec. A Q Resp. at 3, 10–14; Sec. B Q Resp at 4; Letter from D. Porter to W. Coggins, re: Saha Thai's First Suppl. Questionnaire Resp. (Feb. 24, 2021), C.R. 175–76; Letter from D. Porter to G. Raimondo, re: Saha Thai's Second Suppl. Questionnaire Resp. (Mar. 18, 2021), C.R. 237–38; Third Suppl. Q Resp. at 2–3.

On June 1, 2021, Wheatland filed rebuttal information pertaining to the responses of a different respondent, Blue Pipe Steel Center Co, Ltd. ("Blue Pipe"), which included business records of BNK. See Letter from C. Cloutier to G. Raimondo, re: Rebuttal Factual Information to Blue Pipe's Supplemental Questionnaire Response at 1, Ex. 3 (June 1, 2021), P.R. 240, C.R. 304 ("BNK Information").[3] Wheatland subsequently filed a case brief, arguing that Saha Thai had not accurately reported its affiliates, meriting application of adverse facts available. See Letter from L. Meisner to G. Raimondo, re: Wheatland's Resubmitted Case Brief at 9, 16 (July 27, 2021), P.R. 272, C.R. 318 ("Wheatland's Case Br."). As pertains to BNK, Wheatland referred to evidence that BNK and Saha Thai both employ the same individual as a human resources manager and that BNK's corporate documents indicate that the individual can be contacted at a Saha Thai email address. Id. at 10 (citing BNK Information at Ex. 3). Saha Thai filed a rebuttal brief, arguing that evidence of a shared human resources manager was insufficient to demonstrate " 'control' between Saha Thai and BNK," and therefore "does not show that Saha Thai's reporting was inaccurate under the statute or the Department's prior practice." See Letter from D. Porter to G. Raimondo, Saha Thai's Rebuttal Brief at 10 (Aug. 16, 2021), P.R. 284, C.R. 321.

In its Final Determination, Commerce determined that Saha Thai did not report home market customers flagged by Wheatland as being potentially affiliated with Saha Thai. See Mem. From J. Maeder to R. Majerus, re: Circular Welded Carbon Steel Pipes and Tubes from Thailand:

---

[3] Wheatland also filed rebuttal information pertaining to Saha Thai's home market sales to potentially affiliated customers that did not include information about BNK, to which Saha Thai responded. See Letter from C. Cloutier to G. Raimondo, re: Rebuttal Factual Information to Saha Thai's Supplemental Questionnaire Response (June 1, 2021), P.R. 236, C.R. 278–93; Letter from D. Porter to G. Raimondo, re: Saha Thai's New Factual Information to Rebut, Clarify, or Correct the Information in Wheatland's June 1, 2021, Submission (June 21, 2021), P.R. 255–256, C.R., 314–15.

Issues and Decision Mem. for the Final Results of Antidumping Duty Administrative Review and Final No Shipment Determination, In Part; 2019-2020 at 9–10 (Dep't Com. Dec. 2, 2021), P.R. 291 ("IDM") (Dep't Com. Dec. 3, 2021), P.R. 291; Mem. From T. Schauer to N. Decker, re: Circular Welded Carbon Steel Pipes and Tubes from Thailand: Final Analysis Mem. for Saha Thai Steel Pipe Public Co. Ltd. at 2 (Dep't Com. Dec. 2, 2021), P.R. 292, C.R. 322 ("Final Analysis Mem."). Commerce applied adverse facts available to determine that seven home market customers, including BNK, were affiliated with Saha Thai and calculated a dumping margin of 36.97 percent. Final Determination, 86 Fed. Reg. at 69621; IDM at 9–10.

### B.     Remand Proceedings

Saha Thai filed the underlying case against the Defendant the United States ("the Government") on December 20, 2021, seeking judicial review of Commerce's Final Determination. See Compl. Dec. 20, 2021, ECF No. 6. Thai Premium Pipe Company Ltd. ("Thai Premium"), a voluntary respondent in the administrative review, intervened as Plaintiff-Intervenor. See Consent Mot. to Intervene as a Matter of Right, Jan. 18, 2022, ECF No. 13; Order, Jan. 18, 2022, ECF No. 18. Wheatland Tube Company ("Wheatland") and Nucor Tubular Products Inc. ("Nucor")—domestic producers of welded steel pipes and tubes that participated as domestic interested parties in the administrative review—intervened as Defendant-Intervenors. Wheatland's Consent Mot. to Intervene as Def.-Inter. at 1, Jan. 19, 2022, ECF No. 24; Nucor's Consent Mot. to Intervene as a Matter of Right at 1–2, Jan. 19, 2022, ECF No. 25; Order, Jan. 19, 2022, ECF No. 31.

As relevant to the instant proceeding, Saha Thai originally challenged Commerce's determination that Saha Thai was affiliated with seven home market customers and its application

of adverse facts available to Saha Thai's home market sales. Pl.'s Br. in Supp. of its Mot. for J. on the Agency R. at 22–23, May 9, 2022, ECF No. 40 ("Pl.'s MJAR").[4] Following a voluntary remand for Commerce to revisit a separate aspect of the dumping margin calculation,[5] see First Remand Order at 2, the court considered the parties' arguments regarding the challenged affiliation determinations. See Second Remand Order, 663 F. Supp. 3d at 1368. With respect to six of the seven potential affiliates, the court sustained Commerce's application of adverse facts available to determine that the six companies were affiliated with Saha Thai. Id. at 1375. With respect to BNK, the court remanded Commerce's affiliation determination, reasoning that "the sharing of a single human resources manager is insufficient for a reasonable mind to conclude that Saha Thai and BNK are affiliated" and holding that Commerce did not apply the correct statutory standard. Id. at 1376–77.

Commerce issued the results of its second remand redetermination on October 10, 2024, in which Commerce determined under protest that Saha Thai and BNK were not affiliated and recalculated the dumping margin for Saha Thai to be 1.65 percent     Final Results of

---

[4] Thai Premium expressed support for Saha Thai's challenge. See Pl.-Inter.'s Letter in Supp. of Pl.'s Mot. for Judgment on the Agency Record, May 10, 2022, ECF No. 42; see also Pl.-Inter.'s Reply Br., Aug. 26, 2022, ECF No. 55.

[5] The court granted the Government's request for a voluntary remand to reconsider Saha Thai's separate challenge to Commerce's adjustment of the dumping margin based on "a particular market situation," see Def's Corrected Resp. to Pl.'s Rule 56.2 Mot. for J. on the Agency R. at 41, July 19, 2022, ECF No. 47; First Remand Order at 2. On remand, Commerce did not make a particular market situation adjustment and recalculated the dumping margin to be 14.74 percent, but did not otherwise alter its determination. See Final Results of Redetermination Pursuant to Court Remand at 4, 7, Nov. 29, 2022, ECF No. 61 ("First Remand Results"). No party opposed the First Remand Results, although Saha Thai noted its remaining, unresolved objections to the Final Determination. See Pl.'s Cmts. in Supp. of Remand Redetermination Results at 3, Dec. 21, 2022, ECF No. 63; see also Pl.-Inter.'s Cmts. in Supp. of Commerce's Remand Redetermination at 2, Dec. 23, 2022, ECF No. 64.

Redetermination Pursuant to Court Order at 9, (Dep't Com. Oct. 10, 2024), ECF No. 87 ("Second Remand Results"). Commerce "agree[d] with the [c]ourt that, by itself, the sharing of a single human resources manager without further record evidence showing affiliation would be insufficient to determine that Saha Thai and BNK are affiliated." Id. at 4. Commerce also clarified that its prior affiliation determination was based on the application of applying adverse facts available. Id. at 4–5.

All parties asked the court to sustain the Second Remand Results. See Pl.-Inter.'s Cmts. in Supp. of Commerce's Second Remand Redetermination, Nov. 11, 2024, ECF No. 89; Pl.'s Cmts. on Commerce's Second Redetermination on Remand at 5, Nov. 11, 2024, ECF No. 90; Def.'s Resp. to Cmts. on Commerce's Remand Redetermination at 1, Dec. 11, 2024, ECF No. 93; Wheatland's Reply to Cmts. on the Remand Redetermination at 4, Dec. 16, 2024, ECF No. 94.

After holding oral argument, the court remanded Commerce's Second Remand Results, holding that Commerce had changed its position without acknowledging the change in its rationale. See Third Remand Order, 789 F. Supp. 3d at 1308. Specifically, the court found that Commerce cited the Shared Debt or Equity Question in the Final Determination and the Shared Employee Question of the Third Supplemental Questionnaire in the Second Remand Results. See id. at 1304–05.

Commerce issued its Third Remand Results on August 11, 2025, in which Commerce again applied an adverse inference to determine that Saha Thai and BNK are affiliated and recalculated the dumping margin to be 14.74 percent. See Third Remand Results at 2, 19. Commerce stated that in the Final Determination it "inadvertently cited [the Shared Equity or Debt Question]," and that Commerce was "changing [its] position on remand . . . including [by] correcting Commerce's

citation to supporting documentation to accurately reflect Commerce's analysis." Id. at 4.[6]

### III.    *Procedural History*

On September 17, 2025, Saha Thai and Thai Premium filed comments in opposition to the Third Remand Results, challenging Commerce's determination as "unsupported by substantial evidence, not in accordance with law, and inconsistent with the [c]ourt's Third Remand Order." Pl.'s Cmts. on Third Remand Redetermination at 4, Sept. 17, 2025, ECF No. 118 ("Pl.'s Br."); see also Pl.-Inter.'s Cmts. on Third Remand Redetermination at 1, Sept. 17, 2025, ECF No. 117 ("Pl.-Inter.'s Br.") (incorporating by reference Saha Thai's arguments).  The Government and Wheatland each filed responses asking the court to sustain the Third Remand Results.  See Def.'s Resp. to Saha Thai's Cmts. on Commerce's Remand Redetermination at 1, Nov. 24, 2025, ECF No. 131 ("Gov't Br."); Def.-Inter.'s Reply to Cmts. on the Third Remand Redetermination at 1, Dec. 8, 2025, ECF No. 132 ("Def.-Inter.'s Br.").[7]

The court issued written questions, to which the parties responded.  See Ct.'s Qs for Oral Arg., Jan. 29, 2026, ECF No. 139; Pl.'s Resps. to the Ct.'s Qs for Oral Arg., Feb. 19, 2026, ECF No. 142 ("Pl.'s OAQ Resp."); Def.-Inter.'s Resp. to the Ct.'s Qs, Feb. 19, 2026, ECF No. 143 ("Def.-Inter.'s OAQ Resp."); Def.'s Resp. to Ct.'s Qs for Oral Arg., Feb. 19, 2026, ECF No. 144 ("Gov't OAQ Resp.").

The court held oral argument on April 16, 2026.  ECF No. 148.  Following oral argument,

---

[6] On July 7, 2025, this case was reassigned from the Honorable Stephen Alexander Vaden to the undersigned pursuant to 28 U.S.C. § 253(c) and USCIT Rule 77(e)(4).  Reassignment Order, July 7, 2025, ECF No. 108.

[7] Nucor did not respond to Saha Thai's comments on the Third Remand Results or otherwise participate in the remand proceedings currently before the court.  See generally Third Remand Results.

Saha Thai and Wheatland submitted supplemental briefing to the court.  See Def.-Inter.'s Post Oral

Arg. Submission, Apr. 27, 2026, ECF No. 149; Pl.'s Post-Arg. Submission, Apr. 27, 2026, ECF

No. 151 ("Pl.'s Suppl. Br.").  All relevant filings are now before the court.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction under 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a(a)(2).  The

standard of review is provided by 19 U.S.C. § 1516(a)(b)(1)(i): the court "must uphold

Commerce's determinations unless they are 'unsupported by substantial evidence on the record, or

otherwise not in accordance with law,' " Ad Hoc Shrimp Trade Action Comm. v. United States,

802 F.3d 1339, 1348 (Fed. Cir. 2015) (quoting 19 U.S.C. § 1516(a)(b)(1)(i)), which includes

"compliance with the court's remand order." Shandong Rongxin Imp. & Exp. Co. v. United States,

42 CIT __, __, 331 F. Supp. 3d 1390, 1402 (2018), aff'd, 779 F. App'x 744 (Fed. Cir. 2019)

(internal quotation marks omitted).

"Substantial evidence is defined as 'such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion.' " Zhejiang, 652 F.3d at 1340 (quoting Nippon Steel,

337 F.3d at 1379).  "[The] court reviews the record as a whole, including evidence that supports

as well as evidence that 'fairly detracts from the substantiality of the evidence.' " Id. (quoting

Nippon Steel, 337 F.3d at 1379).  The court may find that Commerce's determination is "supported

by substantial evidence even if two inconsistent conclusions can be drawn from the evidence." Ad

Hoc Shrimp, 802 F.3d at 1348 (citing Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 5620 (1966)).

## DISCUSSION

Saha Thai challenges the Third Remand Results on several grounds.  First, Saha Thai

asserts that Commerce failed to comply with the court's previous remand order in changing its

position on remand.  See Pl.'s Br. at 2.  Second, Saha Thai argues Commerce's application of an adverse inference is unsupported by substantial evidence and that Commerce failed to provide Saha Thai with notice and an opportunity to remedy its responses as required by 19 U.S.C. § 1677m(d).  See id. at 3–4.  Third, Saha Thai claims that the Third Remand Order unlawfully ordered relief that no party requested in violation of the party presentation principle.  See Pl.'s OAQ Resp. at 9.

The Government and Wheatland ask the court to sustain the Third Remand Results, arguing that Commerce complied with the court's previous remand order and permissibly changed its reason for applying an adverse inference to Saha Thai.  Gov't Br. at 7; see also Def.-Inter.'s Br. at 6.  They also argue that Commerce's application of an adverse inference is supported by substantial evidence because necessary information was missing from the record, Saha Thai failed to cooperate to the best of its ability in reporting its connections to BNK, and "Commerce complied with the notice requirements of 19 U.S.C. § 1677m(d)." Gov't Br. at 10, 14; see also Def.-Inter.'s Br. at 7–9.  Finally, the Government contends that Saha Thai's challenge to the Third Remand Order is improperly raised and waived.  See Oral Arg. Tr. at 39:5–22, Apr. 29, 2026, ECF No. 152 ("Tr.").

The court sustains the Third Remand Results, holding that Commerce complied with the prior remand order and principles of administrative law and that Commerce's application of an adverse inference to the affiliation determination between Saha Thai and BNK is supported by substantial evidence and in accordance with law.  The court also concludes that Saha Thai's challenge to the Third Remand Order based on the party presentation principle is waived.

### I.      Commerce Complied with Administrative Law and the Prior Remand Order

In issuing a redetermination on remand, Commerce has two options.  "First, the agency can offer a fuller explanation of the agency's reasoning at the time of the agency action," Biden v. Texas, 597 U.S. 785, 808 (2022) (quoting Dep't of Homeland Sec. v. Regents of Univ. of Cal., 591 U.S. 1, 20 (2020)), in which case " 'the agency may elaborate' on its initial reasons for taking the action, 'but may not provide new ones.' " id. (quoting Regents, 591 U.S. at 21).  "Alternatively, 'the agency can deal with the problem afresh by taking new agency action.' " Id. (quoting Regents, 591 U.S. at 21).  If Commerce changes its position on remand, it "is not limited to its prior reasons but must comply with the procedural requirements for new agency action," see Regents, 591 U.S. at 21, meaning it must "examine the relevant data and articulate a satisfactory explanation for its action," Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Automobile Ins. Co., 463 U.S. 29, 43 (1983).  In changing its position, "the requirement that an agency provide reasoned explanation for its action would ordinarily demand that it display awareness that it is changing position."  F.C.C. v. Fox Television Stations, Inc., 556 U.S. 502, 515 (2009).

In the Third Remand Results, Commerce took the second option: "changing [its] position on remand and applying partial [adverse facts available] to Saha Thai with respect to its home market sales to BNK."  Third Remand Results at 4.  Commerce explained that, although its position on remand was "consistent with Commerce's original intention in the [Final Determination]" to apply an adverse inference to the affiliation determination between Saha Thai and BNK, it was "correcting Commerce's citation to supporting documentation to accurately reflect Commerce's analysis."  Id.  Commerce also changed its position from the prior remand redetermination, in which Commerce, under protest, did not apply an adverse inference to Saha Thai with respect to

its home market sales to BNK.[8]  See Second Remand Results at 4.  In sum, the Third Remand

Results represent a change in position as to (1) the portion of the record that Commerce relied

upon in justifying application of an adverse inference in the Final Determination and (2) the

determination, under protest, to not apply an adverse inference in the Second Remand Results.  See

Third Remand Results at 3–5.

Saha Thai argues that "[i]n failing to acknowledge that it has changed its position nor

explaining the reason for the change, Commerce has defied the [c]ourt's Third Remand Order and

basic principles of administrative law."  Pl.'s Br. at 11.  This argument is unavailing.

First, Commerce acknowledged that it was changing its position as to the portion of the

record that supports its determination to apply an adverse inference by stating that "[t]his

redetermination is a new agency action wherein we are changing the question on which our

analysis is based."  Third Remand Results at 5; see also Fox, 556 U.S. at 515.  Commerce also

acknowledged it was "changing [its] position" from to the Second Remand Results by "applying

partial [adverse facts available] to Saha Thai with respect to its home market sales to BNK."  Third

Remand Results at 4.

Second, Commerce explained that it changed its position in order to correct its prior

inadvertent citation to the Shared Debt and Equity Question.  Third Remand Results at 3–4.

Commerce articulated that it intended to cite the Shared Employee Question, not the Shared Debt

or Equity Question in the Final Determination, and that this was evident because its analysis "did

---

[8] In the Second Remand Results, Commerce explained that its original affiliation determination
was based on application of an adverse inference and stated that it still found that "the application
of [adverse facts available] was warranted."  Second Remand Results at 4, 5.  Commerce did not,
however, apply an adverse inference in the Second Remand Results and instead determined under
protest that Saha Thai and BNK were not affiliated under 19 U.S.C. § 1677(33).  Id. at 6.

not cite to any debt or equity positions with respect to BNK" but did cite record evidence "that this individual was the human resources manager for both Saha Thai and BNK." Id. at 4. The court finds this to be a "satisfactory explanation" for Commerce's change in position. State Farm, 463 U.S. at 43.

Third, Commerce's redetermination on remand is consistent with the court's Third Remand Order, which explained that "Commerce is always free to change its position and explain its reasoning for doing so on remand." Third Remand Order, 789 F. Supp. 3d at 1306. The court specified that, on remand, Commerce could either "maintain its original position that [the Shared Debt or Equity Question] is the question on which it wishes to base its analysis" or "pick a different question" to support its determination. Id. at 1308. If Commerce changed its position and relied on the Shared Employee Question, the court instructed that "[Commerce] would need to forthrightly acknowledge that it is changing the question on which it bases its analysis." Id. Commerce did just that. In contrast to the prior remand redetermination in which "Commerce claim[ed] not to have changed its position," see id. at 1304, Commerce now has acknowledged that it previously cited the Shared Debt and Equity Question, stated that it is changing its position to cite the Shared Employee Question, and explained the reason for the change in its position, see Third Remand Results at 3–5. The court therefore holds that Commerce complied with administrative law and the Third Remand Order in changing its analysis to cite the Shared Employee Question as the basis for applying an adverse inference.

II.     ***Commerce's Application of Adverse Facts Available to the Challenged Affiliation Determination Is Supported by Substantial Evidence and in Accordance with Law***

Commerce may apply adverse facts available where necessary information to make an

affiliation determination is missing from the record, and a respondent failed to cooperate by not acting to the best of its ability by "provid[ing] false and incomplete information regarding its affiliates." Ad Hoc Shrimp, 802 F.3d at 1356 (internal quotation marks omitted). Where Commerce determines that a respondent did not comply with a request for information and before applying an adverse inference, Commerce must inform the respondent and provide the respondent with "an opportunity to remedy or explain the deficiency." 19 U.S.C. § 1677m(d).

In the Third Remand Results, Commerce determined that necessary information to make an affiliation determination for Saha Thai and BNK was missing from the record, Third Remand Results at 8, and that "Saha Thai, by not reporting [its shared human resources manager] with BNK, withheld information that was requested by Commerce, failed to provide such information in a timely manner or in the form or manner requested, and significantly impeded this review," id. at 11. Commerce also determined that, "by withholding this information, Saha Thai had not acted to the best of its ability" to cooperate to Commerce's requests for information. Id. Finally, Commerce determined that it had complied with the requirements of 19 U.S.C. § 1677m(d) by "provid[ing] Saha Thai with an opportunity to remedy or explain its failure to provide the originally requested information in the Third Supplemental Questionnaire Response." Id. at 16. Commerce then applied an adverse inference in selecting among the facts otherwise available to determine that Saha Thai and BNK are affiliated. See id. at 2, 18.

Saha Thai challenges Commerce's application of an adverse inference as unsupported by substantial evidence and not in accordance with law. See Pl.'s Br. at 15. First, Saha Thai argues that the determination that necessary information was missing from the record is based on a "subsidiary conclusion" that Saha Thai and BNK were affiliated. Id. at 21. Second, Saha Thai

contends that, "[w]ith respect to BNK, the evidentiary record demonstrates that Saha Thai fully cooperated to the best of its ability" because Saha Thai was not required to report the shared human resources manager, such that application of an adverse inference was not warranted. Pl.'s OAQ Resp. at 5; see also Pl.'s Br. at 16. Third, Saha Thai claims that Commerce failed to comply with 19 U.S.C. § 1677m(d). Pl.'s Br. at 19-20.

For the reasons that follow, the court holds that Commerce's application of an adverse inference to the determination of affiliation between Saha Thai and BNK is supported by substantial evidence and in accordance with law.

### A. Commerce's Determination that Saha Thai Failed to Report Necessary Information Is Supported by Substantial Evidence

Saha Thai argues that Commerce's determination that necessary information was missing from the record was improperly and "directly premised upon Commerce's subsidiary conclusion that Saha Thai and BNK were affiliated." Pl.'s Br. at 21. In other words, Saha Thai contends that Commerce assumed that Saha Thai and BNK were affiliated without substantial evidence, and—based on that assumption—determined that the information about the shared human resources manager and other potential connections was necessary. See id. This argument mischaracterizes Commerce's determination. Commerce did not, as Saha Thai contends, determine that Saha Thai and BNK are affiliated under 19 U.S.C. § 1677(33) based on the "lone fact" that the companies shared a human resources manager. Pl.'s Br. at 21. Indeed, Commerce acknowledged that, "by itself, the sharing of a single human resources manager without further record evidence showing affiliation would be insufficient to determine that Saha Thai and BNK are affiliated within the meaning of [19 U.S.C. § 1677(33)]." Third Remand Results at 18 (quoting Second Remand Results at 4). Instead, Commerce explained that it was "unable to make an affiliation

determination under [19 U.S.C. § 1677(33)]" due to the absence of record evidence regarding Saha

Thai and BNK's ties.  Third Remand Results at 9.

As explained by Commerce, record information submitted by Wheatland indicated that

Saha Thai and BNK shared a human resources manager and that this individual listed a Saha Thai

email address in BNK corporate documents.  See Third Remand Results at 4 (citing BNK

Information at Ex. 3).  In light of evidence that Saha Thai did not disclose that it shared a human

resources manager with BNK, Commerce determined that necessary information was missing

from the record, specifically: "complete details on the ties between Saha Thai and BNK to make

an affiliation determination under [19 U.S.C. § 1677(33)]."  Id.  Commerce explained that Saha

Thai's failure to report the shared human resources manager "significantly impede[d]" its

investigation because it prevented Commerce from further inquiring into Saha Thai and BNK's

ties.  19 U.S.C. § 1677e(a)(2)(C); see also Third Remand Results at 10–11.  In particular:

> Commerce was prevented the opportunity to further inquire about and make a
> determination on: (1) the circumstance in which both Saha Thai and BNK hired the
> same individual as a human resources manager at the same time, e.g., who was
> behind hiring this person for both companies; (2) whether this human resources
> manager was just an administrative employee maintaining personnel files and
> records or a someone with more elevated managerial authority involved in and
> influencing and handling appointments, promotions, demotions, and firing of high-
> ranking managers within both companies; (3) whether there are additional
> unreported managers working for both Saha Thai and BNK with a similar level of
> managerial authority and influence in both companies and, if so, who was behind
> hiring these managers in both companies; (4) whether the circumstances behind his
> appointment as the human resources manager in both companies and his role as the
> human resources manager lead to additional evidence for us to find Saha Thai and
> BNK affiliated or not; and (5), most importantly, what other links may exist
> between Saha Thai and BNK which Saha Thai failed to report in its questionnaire
> response.

Third Remand Results at 8–9.  Commerce stated that it "was further unable to determine whether

Saha Thai's home market sales to BNK are sales to an affiliate that requires additional analysis."

Id. at 18.[9]

The information that Commerce says it would have requested could be used to determine "whether control over another person [or company] exists." 19 C.F.R. § 351.102(b)(3). Commerce's regulations state that Commerce will consider "close supplier relationships" as evidence of potential affiliation. Id. Information that Commerce determined was missing from the record—including "whether there are additional unreported managers working for both Saha Thai and BNK" and the extent of the individual's authority over "appointments, promotions, demotions, and firing of high-ranking managers within both companies," Third Remand Results at 8—could be considered relevant evidence of "whether control over another [company] exists." 19 C.F.R. § 351.102(b)(3).[10]

Saha Thai's remaining arguments are unpersuasive. Saha Thai cites Hyundai Heavy Indus. Co. v. United States, a case in which the court remanded a determination of affiliation pursuant to 19 U.S.C. § 1677(33) because Commerce "did not . . . explain" and "failed to identify any evidence supporting its finding of affiliation . . . ." 43 CIT __, __, 393 F. Supp. 3d 1293, 1319

---

[9] It appears from the record that there may be a second individual employed by both Saha Thai and BNK based on references in BNK's corporate documents to an additional individual with a Saha Thai email address who appears to be a BNK shareholder. See BNK Information at Ex. 3; Wheatland Case Br. at 5–9. Because Commerce did not cite evidence related to this second individual, the court does not base its analysis upon evidence related to that individual in its evaluation of whether Commerce's determination is supported by substantial evidence. See Changzhou Wujin Fine Chem. Factory Co. v. United States, 701 F.3d 1367, 1379 (Fed. Cir. 2012) ("[R]eview of an administrative decision must be made on the grounds relied on by the agency." (quotation marks omitted)).

[10] The court notes that the page of BNK's business records containing information about the shared human resources manager indicates that BNK has a total of 13 employees. See BNK Information at Ex. 3; see also Third Remand Results at 7 n.27. Though not part of Commerce's analysis, the small number of employees suggests it is possible that the individual in question may exercise some level of control within BNK.

(2019); see also Pl.'s Br. at 21–22.  The underlying evidence similar: Hyundai involved a sales agent that "use[d] an email address and a title and a division that belongs to" the company in question, Hyundai, 393 F. Supp. 3d at 1319; here, BNK's corporate records list an individual with a Saha Thai email address as the human resources manager, see Third Remand Results at 4 (citing BNK Information at Ex. 3).  But, critically, Commerce's analysis differs.  In Hyundai, "Commerce determined that [the two entities] were affiliated pursuant to 19 U.S.C. §§ 1677(33)(D) and (E)" and applied a total adverse inference based in part on the affiliation determination.  Hyundai, 393 F. Supp. 3d at 1319.  In contrast, here Commerce determined that necessary information was missing that prevented it from conducting an affiliation analysis pursuant to 19 U.S.C. § 1677(33).  See Third Remand Results at 8.[11]

Keeping in mind that "information about affiliation is fundamental for Commerce to calculate the dumping margin," Kumar, 779 F. Supp. 3d at 1340–41 (internal quotation marks and citation omitted); see also Crawfish Processors, 477 F.3d at 1378, the court finds that Commerce's determination that it lacked sufficient information to determine whether Saha Thai and BNK are affiliated is supported by substantial evidence and in accordance with law.

### B.  Commerce's Determination that Saha Thai Failed to Cooperate to the Best of Its Ability Is Supported by Substantial Evidence

Commerce may apply an adverse inference in its selection of facts otherwise available if

---

[11] Saha Thai also argues that the reasoning of the Second Remand Order, which cited Hyundai, should guide the court's reasoning here.  See Pl.'s Br. at 21–22.  The relevant portion of the Second Remand Order quoted Commerce's statement in the Final Determination that Commerce could not determine that Saha Thai and BNK were "[n]ecessarily not affiliated," which the court held was not the correct statutory standard.  See Second Remand Order, 666 F. Supp. 3d at 1377.  Commerce did not use the phrase "necessarily not affiliated" in remand redetermination that is the subject of the challenge now before the court, see generally Third Remand Results, so the court's reasoning in the Second Remand Order is of limited relevance.

Commerce determines an interested party has "failed to cooperate by not acting to the best of its ability to comply with a request for information." 19 U.S.C. § 1677e(b)(1). Here, Commerce found that Saha Thai failed to report the shared human resources manager with BNK in response to Commerce's Initial Questionnaire and the Shared Employee Question in the Third Supplemental Questionnaire, see Third Remand Results at 10, and that "by withholding this information, Saha Thai had not acted to the best of its ability, and an adverse inference was therefore warranted in accordance with [19 U.S.C. § 1677e(b)]." Id. at 11.

Saha Thai contends that it "cooperated to the best of its ability" because as pertains to BNK it "provided complete responses to Commerce's affiliation inquiries in the original questionnaires" and its response to the Shared Employee Question in the Third Supplemental Questionnaire "was also accurate and truthful." Pl.'s Br.at 16–17; see also Pl.'s OAQ Resp. at 5. Saha Thai argues that "[t]he suggestion that a human resources staff member—whose duties relate to internal personnel management—must be disclosed in response to a question targeting operational or commercial overlap goes beyond both the plain language of the question and the statutory framework for analyzing affiliation," and that "[t]here is no evidence this was an intentional omission,[12] nor was it unreasonable for Saha Thai to interpret [the Shared Employee Question] as inapplicable to this individual." Id. at 18.

Saha Thai's arguments are unpersuasive. In Question 2.h of Section A of the Initial Questionnaire, Commerce instructed Saha Thai to report affiliated companies involved in the development, production, sale and distribution of the merchandise under review, and to

---

[12] Saha's Thai's intent is not relevant because "the statute does not contain an intent element" and Commerce did not discuss Saha Thai's intent in making its determination. Nippon Steel, 337 F.3d at 1383; see also Third Remand Results at 6.

specifically consider "other relationships between [Saha Thai] and the other person (e.g., director/manager relationships)." Initial Questionnaire at A-6; see also Third Remand Results at 6. Question 2.h also referenced 19 C.F.R. § 351.401(f)(2)(iii), which states that when considering whether to treat affiliated parties as a single entity, Commerce "may consider" factors including "[w]hether operations are intertwined, such as through . . . the sharing of facilities or employees . . . ." 19 C.F.R. § 351.401(f)(2)(iii); see also Initial Questionnaire at A-6. The Initial Questionnaire contained several other questions asking Saha Thai to report affiliates. See Initial Questionnaire at A-2; Gov't OAQ Resp. at 4; Def.-Inter.'s OAQ Resp. at 2. In response, Saha Thai did not identify BNK as a potential affiliate or disclose the shared human resources manager. See Third Remand Results at 6–7; Sec. A Q Resp. at 3, 10–14.

In the Third Supplemental Questionnaire, Commerce directed Saha Thai in the Shared Employee Question to "state whether Saha Thai's . . . employees, stockholders, managers, directors, officers, or department heads currently are or previously were employed by any other company involved in the development, production, sales and/or distribution of the merchandise under review." Third Suppl. Questionnaire at 3. Record evidence demonstrates that BNK is a company involved in the sale and distribution of the subject merchandise, and the shared human resources was employed by both Saha Thai and BNK. See BNK Information at Ex. 3. It was therefore reasonable for Commerce to determine that Saha Thai failed to cooperate to the best of its ability by not disclosing the shared human resources manager in response to the Shared Employee Question. See Third Remand Results at 10.

Saha Thai argues that, although BNK is a company involved in the sale and distribution of

subject merchandise,[13] it should not have been expected to report the shared human resources manager because the individual's "role . . . , by its very nature, does not entail involvement in production processes, sales activity, product distribution, or any commercial operations." Pl.'s Br. at 17–18. [14] But Saha Thai misreads the question. The Shared Employee Question "did not ask for managers specifically involved in the sale of foreign like product." Third Remand Results at 16. The individual is within the scope of the question as an "employee[]" and "manager[]" "employed by" both Saha Thai and BNK, a home market distributor of subject merchandise. Third Suppl. Questionnaire at 3; see also Third Remand Results at 16; Pl.'s OAQ Resp. at 2.

In light of the wording of Commerce's initial and supplemental questionnaires, it was "reasonable for Commerce to expect that more forthcoming responses should have been made" regarding Saha Thai's relationship with BNK in response to the Initial and Third Supplemental Questionnaire. Nippon Steel, 337 F.3d at 1383.

In addition, Saha Thai's failure to report its potential affiliation with six other home market customers lends further support to Commerce's determination that Saha Thai failed to cooperate to the best of its ability in disclosing information about potential affiliates. See Third Remand Results at 15 ("Saha Thai's failure to identify the shared [human resources] manager with BNK in

---

[13] Saha Thai "do[es] not dispute that BNK, the company, is 'involved in the development, production, sales and/or distribution of the merchandise under review,' given that BNK is a home market reseller/distributor of Saha Thai produced subject merchandise." Pl.'s OAQ Resp. at 2 (quoting Third Suppl. Questionnaire at 3).

[14] Saha Thai describes the individual as a "low-level human resources manager," but the record does not contain information on the extent of the individual's responsibilities. Pl.'s Br. at 17. As Commerce explained, Saha Thai's failure to report the shared human resources manager prevented Commerce from inquiring further into the individual's role and responsibilities within both companies. See Third Remand Results at 8-9.

either its original response or in response to [the Shared Employee Question] is consistent with its failure to identify six other home market customers with which Saha Thai shared various connections."); see also Fujian, 27 C.I.T. at 1061 n.2, 276 F. Supp. 2d at 1374 n.2 ("[N]umerous oversights would likely suggest a pattern of unresponsiveness justifying" application of adverse facts available." (internal quotation marks and citation omitted)). While the shared human resources manager would not support a finding of affiliation with BNK, it is one of several pieces of information Saha Thai failed to report regarding potential affiliation, namely overlapping stock ownership, board membership, and directorship between Saha Thai and six other home market customers. See Second Remand Order, 663 F. Supp. 3d at 1372. Because "information about affiliation is fundamental for Commerce to calculate the dumping margin," Kumar, 779 F. Supp. 3d 1340–41 (quotation marks omitted), "the information that was ultimately missing from the record was foundational to Commerce's ability to perform the antidumping duty calculations in a sound manner." Hyundai Elec. & Energy Sys. Co. v. United States, 15 F.4th 1078, 1090–91 (Fed. Cir. 2021) (affirming application of an adverse inference). The court therefore concludes that Commerce's determination that Saha Thai failed to cooperate to the best of its ability in reporting the shared human resources with BNK is supported by substantial evidence.

### C. Commerce's Determination Is in Accordance with 19 U.S.C. § 1677m(d)

Recall that, before applying an adverse inference, Commerce must "promptly inform the person submitting the response of the nature of the deficiency and shall, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency." 19 U.S.C. § 1677m(d). Saha Thai argues that Commerce did not comply with 19 U.S.C. § 1677m(d) because Wheatland submitted information about BNK that included the identity of the shared human

resources manager in response to a different respondent's questionnaire response, and that "Saha Thai had no way of knowing there was an alleged issue and no opportunity to provide an explanation or factual information to clarify the information" about the shared human resources manager. Pl.'s Br. at 20. Saha Thai contends that Commerce could have issued another supplemental questionnaire, asking Saha Thai to "explain the circumstances of the [human resources] employee's employment at BNK," and that its failure to do so was a violation of § 1677m(d). Id. The Government and Wheatland argue that Commerce complied with the requirements of § 1677m(d). See Gov't Br. at 14–16; Def.-Inter.'s Br. at 7–8.

Contrary to Saha Thai's position, Commerce was not required to issue an additional supplemental questionnaire under 19 U.S.C. § 1677m(d). "When a respondent provides seemingly complete, albeit completely inaccurate, information, § 1677m(d) does not require Commerce to issue a supplemental questionnaire seeking assurances that the initial response was complete and accurate." ABB, 355 F. Supp. 3d at 1222. Rather, the requirement to provide notice and an opportunity to remedy a deficient response applies where "Commerce was or should have been aware of the deficiency in the questionnaire response." Id.; see also Shandong Rongxin Imp. & Exp. Co. v. United States, 43 CIT __, __, 355 F. Supp. 3d 1365, 1374 (2019) (holding that Commerce was not required to issue a questionnaire pursuant to § 1677m(d) where the initial request was clear and "Commerce did not discover [the deficiency] until late in the review").

Commerce provided Saha Thai with multiple opportunities to report its shared human resources manager with BNK by issuing a "series of questionnaires in which the agency repeatedly asked for information about Saha Thai's potential affiliates." Second Remand Order, 663 F. Supp. 3d at 1373. Commerce "clearly requested" the relevant information, Shandong, 355 F. Supp. 3d

at 1374, as its questionnaires specifically referenced "manager relationships" and shared employees, see Initial Questionnaire at A-6; Third Suppl. Questionnaire at 3. Saha Thai's answers to the Initial Questionnaire "demonstrate that it understood [Commerce's] questions to include not only companies that, in Saha Thai's view, clearly were affiliates but also companies for which the question of affiliation might be disputed," Second Remand Order, 663 F. Supp. 3d at 1373–74, yet Saha Thai did not report potential affiliation with BNK, see generally Sec. A Resp. Commerce gave Saha Thai an "opportunity to remedy the deficiencies in its initial response when it issued the Third Supplemental Questionnaire," Second Remand Order, 663 F. Supp. 3d at 1374; once again, Saha Thai did not report the shared human resources manager with BNK in response to the Shared Employee Question, see generally Third Suppl. Q Resp. Saha Thai's questionnaire responses were "seemingly complete," and there was no reason that Commerce "should have been aware of the deficiency." ABB, 355 F. Supp. 3d at 1222. "Having given [Saha Thai] at least two opportunities to report the companies' information, Commerce was not required to 'issue a[n] [additional] supplemental questionnaire to the effect of, 'Are you sure?' " Second Remand Order, 663 F. Supp. 3d at 1374 (quoting ABB, 355 F. Supp. 3d at 1222).

The fact that Commerce later learned of the deficiency in Saha Thai's response does not require it to notify Saha Thai or inquire further. See ABB, 355 F. Supp. 3d at 1222; Shandong, 355 F. Supp. 3d at 1374. The burden was on Saha Thai to create an adequate record. See QVD Food, 658 F.3d at 1324. Saha Thai should have known of the shared human resources manager from the start but "did not alert Commerce to the deficiency and at no time attempted to remedy this deficiency." Shandong, 355 F. Supp. 3d at 1375. While Commerce could have asked Saha Thai to provide further information about the shared human resources manager after learning of

the deficiency from Wheatland's submission, 19 U.S.C. § 1677m(d) does not require Commerce to issue a fourth supplemental questionnaire to this effect, and "the court cannot say that Commerce failed to comply with 19 U.S.C. § 1677m(d)." Id. The court thus holds that Commerce's determination to apply an adverse inference to determine that Saha Thai and BNK are affiliated is supported by substantial evidence and in accordance with law.

### III.  *Saha Thai's Challenge to the <u>Third Remand Order</u> Does Not Provide Grounds for Remand*

Finally, Saha Thai argues that "[the Third Remand Order] was unlawful" because it "order[ed] additional remand relief that no party has requested." Pl.'s OAQ Resp. at 9 (citing United States v. Sineneng-Smith, 590 U.S. 371 (2020) and Risen Energy Co. v. United States, 122 F.4th 1348 (Fed. Cir. 2024)); see also Pl.'s Suppl. Br. at 2–3. In Sineneng-Smith, the Supreme Court explained that under "the principle of party presentation" courts "normally decide only questions presented by the parties." 590 at 375–76 (internal quotation marks and citation omitted). In this case, all parties asked the court to sustain the Second Remand Results, and Saha Thai contends that the Third Remand Order violated the principle of party presentation by "imposing a remand sought by neither party." Pl.'s OAQ Resp. at 9 (quoting Risen Energy, 122 F.4th at 1360 (Stark, J. dissenting in part)). The Government responds that the court should not consider the argument because Saha Thai first invoked the principle of party presentation in response to the court's questions for oral argument, and "[a]rguments not raised in [the] opening brief are waived." Tr. at 39:18–19; see also id. at 39:5–13.

An argument is waived if it is omitted in a party's opening brief; inclusion in supplemental briefs or oral argument does not suffice. See Novosteel SA v. U. S., Bethlehem Steel Corp., 284 F.3d 1261, at 1273–74 (Fed. Cir. 2002); United States v. Ford Motor Co., 463 F.3d 1267, 1276–77

(Fed. Cir. 2006) (argument raised for the first time in a reply brief deemed waived); Shell Oil Co. v. United States, 35 CIT 673, 699–700, 781 F. Supp. 2d 1313, 1335–36 (2011), aff'd, 688 F.3d 1376 (Fed. Cir. 2012) (argument raised for the first time at oral argument deemed waived).  Making "passing reference" to an issue does not suffice to preserve an argument.  ArcelorMittal France v. AK Steel Corp., 700 F.3d 1314, 1325 n.6 (Fed. Cir. 2012)).  To avoid waiver, a party must articulate its argument; "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."  See Home Prods. Int'l, Inc. v. United States, 36 CIT 33, 37, 810 F. Supp. 2d 1373, 1379 (2012) (quoting United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990)).

In its opening brief, Saha Thai states that the court issued the Third Remand Order "[d]espite all parties agreeing that the [c]ourt should affirm the Second Remand Results," Pl.'s Br. at 1, but nowhere in its brief does Saha Thai invoke the party presentation principle or develop an argument challenging the Third Remand Order on that basis, see generally id.  In making "passing reference" to the parties' agreement that the Second Remand Results should be sustained, Saha Thai "has not briefed those issues sufficiently to preserve them."  ArcelorMittal, 700 F.3d at 1325 n.6.

Saha Thai contends that it did not waive this argument because "the substance of the party presentation argument was raised" at oral argument prior to the issuance of the Third Remand Order.  Pl.'s Suppl. Br. at 2; see also id. at 3 (Saha Thai "objected immediately when the remand issue arose, then later identified the doctrinal label that best captures the same objection").  As relevant, Saha Thai stated that "the results should be to affirm the [Second Remand Results], recognizing that all . . . parties in the case have stated that they agree the remand results should be

affirmed." See Revised Tr. of Oral Arg. held Mar. 20, 2025 at 23:6–9, Apr. 3, 2025, ECF No. 105.

Nevertheless, Saha Thai did not explicitly invoke the party presentation principle to the court at

that time. See generally id. Nor does Saha Thai explain why it omitted any reference to the party

presentation principle from its comments on the Third Remand Results. See generally Pl.'s Suppl.

Br; Pl.'s OAQ Resp. That Saha Thai did not include a challenge to the Third Remand Order based

on the party presentation principle in its opening brief "indicate[s] that [Saha Thai is] not pursuing"

that argument. Cooper (Kunshan) Tire Co. v. United States, 45 CIT __, __, 539 F. Supp. 3d 1316,

1339 (2021) (internal quotations marks and citation omitted).[15]

For the reasons set forth above, the court finds that Saha Thai waived its argument that the

Third Remand Order unlawfully ordered relief that no party sought by omitting this argument from

its opening brief, and that Saha Thai's general references to the party's agreement that the parties

agreed the Second Remand Results should be sustained were insufficient to preserve the

argument.[16]

---

[15] Saha Thai argues that Cooper is inapplicable because the court based its determination of waiver on the plaintiff's express statement that it was not pursuing the relevant argument. See Pl.'s Suppl. Br. at 2 (citing Cooper, 539 F. Supp. 3d at 1337–40). Contrary to Saha Thai's position, the court in Cooper concluded that the plaintiffs "waived and abandoned" the relevant argument because the plaintiffs "[did] not offer arguments in support of" the argument in the opening; the court considered the explicit statement in the reply brief "[i]n addition" to the omission of the argument from the plaintiff's opening brief. Cooper, 539 F. Supp. 3d at 1338–39.

[16] Saha Thai's argument is otherwise unavailing because the question before the court is the validity of Commerce's remand redetermination, not the prior remand order. See Saha Thai Steel Pipe Pub. Co. Ltd. v. United States, 50 CIT __, __, 817 F. Supp. 3d 1347, 1358–59 (2026) Where the remand order "did not compel Commerce to adopt a new policy," "alleged errors in earlier interim decisions by the [U.S.] Court of International Trade, setting aside Commerce's initial determination . . . and remanding for further proceedings, provide no ground for setting aside Commerce's most recent decisions." Tung Mung Dev. Co. v. United States, 354 F.3d 1371, 1373, 1379 (Fed. Cir. 2004). Here, the prior remand order did not compel Commerce to adopt a particular determination, see Third Remand Order, 789 F. Supp. 3d at 1308, so "any error in the

**CONCLUSION**

The court concludes that Commerce's application of an adverse inference to determine that Saha Thai and BNK are affiliated is supported by substantial evidence and in accordance with law because it was reasonable for Commerce to expect Saha Thai to disclose that it shared a human resources manager with BNK in response to questions that asked about "manager relationships" and shared employees.  See Initial Questionnaire at A-6; Third Suppl. Questionnaire at 3; Third Remand Results at 10–11.  The court further finds that Commerce complied with the Third Remand Order and principles of administrative law in changing its position to rely on the Shared Employee Question of the Third Supplemental Questionnaire, and that Saha Thai's challenge to the Third Remand Order itself is waived.  The court therefore holds that Commerce's remand redetermination is supported by substantial evidence and in accordance with law.  Commerce's Third Remand Results are sustained.

      **SO ORDERED.**

                                                                    /s/     *Gary S. Katzmann*
                                                                    Gary S. Katzmann, Judge

Dated: July 17, 2026
           New York, New York

---

remand orders is irrelevant because Commerce's redetermination decisions represent new, independent agency interpretations."  Tung Mung, 354 F.3d at 1379.